## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD THOMAS KENNEDY,   :     **CIVIL NO.: 3:18-CV-00767**
                         :
        Plaintiff,       :
                         :     (Judge Mariani)
   v.                    :
                         :     (Chief Magistrate Judge Schwab)
DAVID JOHN DUTCAVAGE, *et al.*, :
                         :
        Defendants.      :

## ORDER
November 30, 2018

### I. Introduction.

This is a civil rights case brought by the plaintiff, Edward Thomas Kennedy

("Kennedy"), against a group of defendants that he collectively refers to as the

"Bandits." *Doc. 8*. We have reviewed his complaint pursuant to 28 U.S.C. §

1915(e), and for the reasons that follow we will dismiss his complaint and give him

leave to file a second amended complaint.

### II. Background and Procedural History.

This is the second case currently before this court that Kennedy has filed

against a group of defendants connected to Schuylkill County, Pennsylvania. In

the first case, in which Kennedy's complaint repeatedly referred to the defendants

as the "Kidnappers," we recently issued an order dismissing Kennedy's complaint

and giving him leave to file an amended complaint. *See Kennedy v. Petrus*, No.

3:18-CV-00697 (M.D. Pa. Nov. 27, 2018). The present case largely rehashes

Kennedy's allegations from that case, the primary difference being the identity of

the named defendants.

Kennedy initiated the present case on April 9, 2018, by filing a complaint

against David John Dutcavage ("Dutcavage"), George Francis Halcovage

("Halcovage"), Joseph R. Groody ("Groody"), and Schuylkill County,

Pennsylvania ("Schuylkill"). *Doc. 1* at 1. Kennedy's complaint alleged that the

defendants had violated a number of constitutional rights, that the defendants had

violated his statutory right to information under the Freedom of Information Act,

and that the defendants were operating a corrupt enterprise under the Racketeer

Influenced and Corrupt Organizations Act ("RICO"). *Id.* at 1-2. Kennedy alleged

that Dutcavage, the Schuylkill County prothonotary; Halcovage, the commissioner

of the Schuylkill County prison board; and Groody, the Schuylkill County sheriff,

were operating a corrupt organization through the Schuylkill County government.

*Id.* ¶ 14-16. The complaint contained a number of conclusory allegations as to

how the defendants' conduct violated RICO.

On April 17, 2018, Kennedy filed a "notice of constitutional question," in

which he argues that the defendants should not be granted sovereign immunity

because "[o]nly God is sovereign." *Doc. 6* at 1. Kennedy then challenges the

constitutionality of Pennsylvania's bad checks statute, 18 Pa. Cons. Stat. § 4105.

*Id.* at 2.  Kennedy alleges that he was prosecuted under the law based on "one

alleged bad check."  *Id.* ¶ 2. Kennedy argues that "[s]ummary offenses in this

statute and all Commonwealth of Pennsylvania statutes deny the accused the

guaranteed constitutional right to a jury trial."  *Id.* ¶ 3.  Kennedy further argues that

"the statute is a criminal statute and does not require proof beyond a reasonable

doubt.  The statute does not require the prosecutor to prove criminal intent."  *Id.* ¶

12.  Finally, Kennedy asserts that the language of the statute is unconstitutionally

vague because the section is titled "bad checks," which "implies and/or means

more than one check."  *Id.* ¶ 15.  On the same day that he filed his "notice of

constitutional question," Kennedy filed a "notice to the court," in which he again

argues that the defendants should not be granted sovereign immunity because

"[o]nly God is sovereign."  *Doc. 7* ¶ 3.  Kennedy also demands a jury trial in that

document.  *Id.*

On June 16, 2018, Kennedy filed an amended complaint.  *Doc. 8.*  His

amended complaint names the same defendants as his original complaint and adds

the Commonwealth of Pennsylvania.  *Id.* at 1.  Throughout the amended complaint,

Kennedy refers to the defendants collectively as the "Bandits."  *See generally id.*

Kennedy alleges five causes of action against the defendants: "trespass, trespass on

the case, trespass on the case – vicarious liability, failure to provide a republican

form of government, and trover." *Id.* ¶ 2.

Kennedy makes a number of conclusory statements about how the

defendants have allegedly violated his rights.  Kennedy alleges that the "Bandits

exceeded their jurisdiction," that he was kept in "constructive imprisonment," and

that they did not prove their jurisdiction.  *Id.* ¶ 3.  He further asserts that the

defendants deprived him of his liberty or "failed to act to prevent the loss … of his

liberty."  *Id.* ¶ 5.  Kennedy asserts that Dutcavage lied under oath and that

Kennedy was "involuntarily charged before a court not of record and not a nisi

prius court."  *Id.* ¶¶ 7-8.  According to Kennedy, the defendants "extorted and stole

funds" from him.  *Id.* ¶ 9.  Kennedy asserts that the defendants breached their duty

to "use due care and not cause an injury to Plaintiff Kennedy" by "causing

injuries" to him "in Schuylkill County, Pennsylvania, and on June 2, 2017 at

Breinigsville, Pennsylvania, and on August 28, 29, and 30 in Lehigh County and

Schuylkill County, Pennsylvania."  *Id.* ¶ 18.  Kennedy seeks damages of "$1,000

for each day of unlawful behaviors for each defendant, or $3,000,000.00,

whichever is greater"; "$5,000 for each failure to act; or $10,000,000.00,

whichever is greater"; along with a variety of declaratory and injunctive relief.

Shortly after filing his amended complaint, Kennedy filed a document titled

"Take Judicial Cognizance," in which he requested "a new judge to administrate

his complaint," specifically, one who "knows how to know, interpret, and defend

the Constitution and the laws that must always conform to its mandates and

promises." *Doc. 9*.


## III. Discussion.

### A. Screening of *In Forma Pauperis* Complaints—Standard of Review.

We have a statutory obligation to conduct a preliminary review of

complaints brought by plaintiffs proceeding *in forma pauperis* under 28 U.S.C. §

1915(e)(2), which provides that:

> (2) Notwithstanding any filing fee, or any portion thereof, that may
> have been paid, the court shall dismiss the case at any time if the court
> determines that—
>> (A) the allegation of poverty is untrue; or
>> (B) the action or appeal—
>>> (i) is frivolous or malicious;
>>> (ii) fails to state a claim on which relief may be granted;
>>> or
>>> (iii) seeks monetary relief against a defendant who is
>>> immune from such relief.

A federal court is obligated to dismiss a complaint brought *in forma*

*pauperis* when the complaint "fails to state a claim on which relief may be

granted."  28 U.S.C. § 1915(e)(2)(B)(ii) (2018).  This statutory text mirrors the

language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief

can be granted."  Fed. R. Civ. P. 12(b)(6).

To state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

In deciding whether to dismiss a case for failure to state a claim upon which relief can be granted, a federal court "must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party." *Krieger v. Bank of America*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. County of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). However, "the

tenet that a court must accept as true all of the allegations contained in a complaint

is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "[A] court

considering a motion to dismiss can choose to begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of

truth." *Id.* at 679.  In practice, this leads to a three-part standard:

> To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a
> court must: 'First, take note of the elements a plaintiff must plead to
> state a claim.  Second, identify allegations that, because they are no
> more than conclusions, are not entitled to the assumption of
> truth.  Finally, where there are well-pleaded factual allegations, a
> court should assume their veracity and then determine whether they
> plausibly give rise to an entitlement for relief.'

*Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (internal quotation marks

and alterations omitted) (quoting *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212,

221 (3d Cir. 2011).

Complaints brought *pro se* are afforded more leeway than those drafted by

attorneys.  In determining whether to dismiss a complaint brought by a *pro se*

litigant, a federal district court is "required to interpret the *pro se* complaint

liberally." *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018).  "[A] *pro se* complaint,

however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (2007).  Nevertheless,

"*pro se* litigants still must allege sufficient facts in their complaints to support a

claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**B. The Complaint Fails to State a Claim On Which Relief Can Be Granted.**

Kennedy's claim is governed by 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983 (2018).

Like the complaint that we dismissed in Kennedy's other action, Kennedy's amended complaint contains no factual allegations whatsoever. Kennedy's complaint makes a series of conclusory statements about the constitutional violations that the defendants allegedly committed, but does not state any facts to support those allegations. The closest Kennedy comes to alleging a fact in his amended complaint is when he states the dates and locations on which some sort of harm occurred (*see doc. 8* ¶ 18), but he does not actually state what happened at those dates and locations. Instead, Kennedy simply asserts that the defendants breached a duty and caused him injuries. Conclusory statements are not entitled to an assumption of truth when considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 679. We

therefore find that Kennedy's complaint fails to state a claim upon which relief can be granted since it is completely devoid of factual allegations.

### C. Kennedy's Notice of a Constitutional Question.

On April 17, 2018, Kennedy raised a constitutional challenge to Pennsylvania's bad checks statute, 18 Pa. Cons. Stat. § 4105. *See doc. 6.* Kennedy's challenge seeks both declaratory and injunctive relief. *See id.* ¶¶ 12-14. We will liberally construe this constitutional challenge as an addendum to Kennedy's complaint. However, because Kennedy has not shown that he has standing to raise such a constitutional challenge, we will dismiss it.

Article III of the United States Constitution specifies that the judicial power of the federal government extends only to cases or controversies. U.S. Const. art. III, § 2. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811 (1997)). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

The doctrine of standing "enforces the Constitution's case-or-controversy requirement." *Id.* at 342 (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)).  The doctrine developed "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo*, 136 S. Ct. at 1547.

"'The irreducible constitutional minimum' of standing consists of three elements." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61).  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). Since the elements of standing are "an indispensable part of the plaintiff's case," each element must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.  "[A]t the pleading stage, the plaintiff must 'clearly allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. 1547 (alterations omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and

'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548 (quoting *Lujan*,

504 U.S. at 560).  "For an injury to be 'particularized,' it 'must affect the plaintiff

in a personal and individual way.'"  *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S.

149, 155 (1990)).  "Particularization is necessary to establish injury in fact, but it is

not sufficient.  An injury in fact must also be 'concrete.'"  *Id.*  "A 'concrete' injury

must be '*de facto*'; that is, it must actually exist."  *Id.*

 With regard to claims seeking declaratory relief, "the Declaratory Judgment

Act does not 'extend' the 'jurisdiction' of the federal courts."  *Medtronic, Inc. v.*

*Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014) (quoting *Skelly Oil Co.*

*v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).  For a federal court to have

jurisdiction to hear a claim for declaratory judgment, there still must be a present

case or controversy.  Thus, in an action seeking declaratory relief, a "jurisdictional

inquiry is required to determine whether an 'actual controversy' exists.'"

*McCahill v. Borough of Fox Chapel*, 438 F.2d 213, 214 (3d Cir. 1971).  "Basically,

the question in each case is whether the facts alleged, under all the circumstances,

show that there is a substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment."  *Id.* at 215 (quoting *Maryland Cas. Co. v. Pac. Coal & Oil*

*Co.*, 312 U.S. 270, 273 (1941)).

Absent a present case or controversy between the parties to a suit, a federal court cannot issue a declaratory judgment of a state law's unconstitutionality. For example, in *Golden v. Zwickler*, 394 U.S. 103 (1969), a New York statute criminalized the distribution of anonymous handbills in connection with an election. *Id.* at 104. The plaintiff, Zwickler, had been convicted under that statute based on his distribution of anonymous handbills in connection with a 1964 congressional election. *Id.* at 104-05. Zwickler's conviction was subsequently reversed by a New York state appellate court on non-constitutional grounds, and Zwickler subsequently filed suit seeking a declaratory judgment of the statute's unconstitutionality under the First Amendment. *See id.* at 105. While his complaint was pending, the Congressman whom Zwickler's handbills had criticized left the legislature for a seat on the New York state judiciary. *Id.* at 106. Given that the Congressman had left the legislature, the United States Supreme Court held that there was no longer a case or controversy: "the fact that it was most unlikely that the Congressman would again be a candidate for Congress precluded a finding that there was 'sufficient immediacy and reality'" to find a case or controversy. *Id.* at 109; *see also, e.g.*, *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (per curiam) (finding no case or controversy where father challenged constitutionality of state statute that permitted police to use deadly force and police authority under such statute was used to justify killing of father's son); *Poe v.*

12

*Ullman*, 367 U.S. 497, 507-09 (1961) (finding no case or controversy where

plaintiffs challenging constitutionality of Connecticut statute barring use of

contraceptives had not been prosecuted under that statute); *McCahill*, 438 F.2d at

217 (finding no case or controversy where landowner challenged zoning

ordinances as unconstitutional but government had not taken any enforcement

action against them).

The requirement of a present case or controversy extends to suits seeking

injunctive relief.  "Past exposure to illegal conduct does not in itself show a present

case or controversy regarding injunctive relief if unaccompanied by any

continuing, present adverse effects."  *City of Los Angeles v. Lyons*, 461 U.S. 95,

102 (1983) (alterations omitted) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96

(1974)); *see also Lujan*, 504 U.S. at 564 (finding no case or controversy where

plaintiff's standing to enjoin the Secretary of the Interior's new interpretation of

the Endangered Species Act was based on the fact that two members of the

organization had previously visited sites where endangered species were present.

"Such 'some day' intentions—without any description of concrete plans, or indeed

even any specification of *when* the some day will be—do not support a finding of

the 'actual or imminent' injury that our cases require." (emphasis in original)).

Kennedy's challenge to the constitutionality of Pennsylvania's bad checks

statute is based on the fact that he was prosecuted under the statute for "one alleged

bad check." *Doc. 6* ¶ 2.  Since the prosecution already happened, there is no

current case or controversy, and therefore Kennedy's standing to challenge the

constitutionality of the statute would have to be based on the prospect of the

government's future enforcement of the statute against him.

There is no case or controversy where a litigant seeks to enjoin future

prosecution under a state statute based on merely "imaginary or speculative" fear

of prosecution.  *Younger v. Harris*, 401 U.S. 37, 42 (1971) (citing *Golden*, 394

U.S. at 103).  A litigant may bring a pre-enforcement challenge to the

constitutionality of a state statute, however, where the litigant is under a "genuine"

threat of prosecution and seeks declaratory relief.  *Steffel v. Thompson*, 415 U.S.

452, 475 (1974) ("[R]egardless of whether injunctive relief may be appropriate,

federal declaratory relief is not precluded when no state prosecution is pending and

a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state

criminal statute, whether an attack is made on the constitutionality of the statute on

its face or as applied."); *Cf. Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S.

383, 393 (1988) (holding that book-seller plaintiffs could bring pre-enforcement

action challenging the constitutionality of a state law restricting the display of

visual or written material depicting sexual or sadomasochistic conduct because the

plaintiffs had "an actual and well-founded fear that the law [would] be enforced

against them").

Kennedy does not allege that he has been genuinely threatened with future prosecution under Pennsylvania's bad checks statute. Nor has he shown that he has an actual and well-founded fear of prosecution. Instead, Kennedy's challenge is based entirely on the fact that he was *previously* prosecuted under the statute for the passing of a bad check. We cannot presume that Kennedy will continue to pass bad checks such that he would be subject to enforcement under the statute, and "it seems to us that attempting to anticipate whether and when [Kennedy] will be charged with crime and will be made to appear [in court] takes us into the area of speculation and conjecture." *O'Shea*, 414 U.S. at 497 (citing *Younger*, 401 U.S. at 41-42). Since Kennedy cannot show the existence of a present case or controversy, he cannot challenge the constitutionality of Pennsylvania's bad checks statute. We will therefore dismiss this question.

**D. Kennedy's Challenge to the Assignment of Judges.**

Kennedy's document titled "Take Judicial Cognizance" requests that "a new judge" be assigned to "administrate his complaint." *Doc. 9*. Specifically, Kennedy requests a judge who "knows how to know, interpret, and defend the Constitution and the laws that must always conform to its mandates and promises." *Id.* We construe this document as a challenge to the assignment of United States District Judge Robert D. Mariani and the undersigned to this case.

Kennedy has not pointed to any reasons, and we are aware of none, as to

why Judge Mariani and the undersigned should not be assigned to this case.  Nor

has he shown how Judge Mariani and the undersigned are unable to "know,

interpret, and defend the Constitution."  We will therefore deny his objection to the

assignment of judges in this case.


**IV. Order.**

For the foregoing reasons, **IT IS ORDERED AS FOLLOWS**:

(**1**) Kennedy's motion for leave to proceed *in forma pauperis* (*doc. 2*) is

**GRANTED**.

(**2**) Kennedy's amended complaint (*doc. 8*) is **DISMISSED**.

(**3**) On or before **December 28, 2018**, Kennedy may file a second amended

complaint.[1]

(**4**) Kennedy's constitutional challenge (*doc. 6*) is **DISMISSED**.

---

[1] The second amended complaint must be titled as a second amended complaint
and must contain the docket number of this case.  The second amended complaint
must be complete in all respects.  It must be a new pleading that stands by itself as
an adequate complaint without reference to the complaints already filed.  The
second amended complaint will completely replace the two prior complaints.  If an
amended complaint is filed, the two prior complaints will have no role in the future
litigation of this case.  The second amended complaint must comply with the
pleading requirements of the Federal Rules of Civil Procedure.

**(5)** Kennedy's motion to compel service of process (*doc. 10*) is **DENIED**

**AS MOOT**.


*S/Susan E. Schwab*
Susan E. Schwab
United States Chief Magistrate Judge