**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

EDWARD THOMAS KENNEDY,    :   **CIVIL NO: 3:18-CV-00767**
                           :
         Plaintiff,       :   (Judge Mariani)
                           :
                           :   (Chief Magistrate Judge Schwab)
            v.         :
                           :
DAVID JOHN DUTCAVAGE, *et al.*,  :
                           :
        Defendants.   :
                           :

**REPORT AND RECOMMENDATION**

**I. Introduction.**

      The plaintiff Edward Thomas Kennedy ("Kennedy") filed a second amended complaint claiming that, *inter alia*, his constitutional rights were violated by the negligent acts of employees from multiple government entities. In accordance with 28 U.S.C. § 1915(e)(2), we review the second amended complaint, and we conclude that it fails to state a claim upon which relief can be granted. Thus, we recommend that this case be dismissed.

**II. Background and Procedural History.**

      This is the second case currently before this court that Kennedy has filed against a group of defendants connected to Schuylkill County, Pennsylvania. In the first case, in which Kennedy's complaint repeatedly referred to the defendants as the "Kidnappers," we issued an order dismissing Kennedy's complaint and

giving him leave to file an amended complaint. *See Kennedy v. Petrus*, No. 3:18-CV-00697 (M.D. Pa. Nov. 27, 2018). Kennedy filed an amended complaint in the first case on January 13, 2019. *See id. doc. 20.* The present case largely rehashes Kennedy's allegations from that case, the primary difference being the identity of the named defendants.

Kennedy initiated the present case on April 9, 2018, by filing a complaint against David John Dutcavage ("Dutcavage"), George Francis Halcovage ("Halcovage"), Joseph R. Groody ("Groody"), and Schuylkill County, Pennsylvania ("Schuylkill"). *Doc. 1* at 1. Kennedy's complaint alleged that the defendants had violated numerous constitutional rights, that the defendants had violated his statutory right to information under the Freedom of Information Act, and that the defendants were operating a corrupt enterprise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.* at 1-2. The complaint contained a number of conclusory allegations as to how the defendants' conduct violated RICO. On April 17, 2018, by way of a "notice of constitutional question," Kennedy asserted challenges to the constitutionality of Pennsylvania's bad checks statute, 18 Pa. Cons. Stat. § 4105. *Doc. 6* at 2.

On June 16, 2018, Kennedy filed an amended complaint. *Doc. 8.* His amended complaint named the same defendants as his original complaint and added the Commonwealth of Pennsylvania. *Id.* at 1. Kennedy alleged five causes

2

of action against the defendants: "trespass, trespass on the case, trespass on the case – vicarious liability, failure to provide a republican form of government, and trover." *Id.* ¶ 2.

On November 30, 2018, we issued an order in which we concluded that Kennedy's amended complaint failed to state a claim upon which relief could be granted and gave him leave to file a second amended complaint. *Doc. 11* at 16. We also concluded that Kennedy did not have standing to challenge the constitutionality of Pennsylvania's bad checks statute, since his challenge was only based on the possibility of future enforcement of the statute against him. *Id.* at 15.

Kennedy filed a second amended complaint on December 6, 2018. *Doc. 12*. In his second amended complaint, Kennedy asserts that "the government exceeded its jurisdiction, and because it exceeded its jurisdiction, [it] injured Plaintiff Kennedy in loss of rights." *Id.* at 2. Kennedy's second amended complaint raises six causes of action: (1) negligence, (2) trespass, (3) trespass on the case, (4) failure to provide a republican form of government, (5) intentional infliction of emotional distress, and (6) vicarious liability. *Id.* at 9, 13, 15, 16, 17, 18.

Kennedy makes multiple conclusory statements about how the defendants violated his rights. *See generally id.* The second amended complaint, while limited in facts, asserts that the "Pennsylvania State Police and a Swat Team army of approximately forty (40) Commonwealth of Pennsylvania employees," injured

Kennedy by showing up to his bedroom door "armed with loaded firearms." *Id.* at 4-5. Kennedy states that the police department "threatened [to] physically injure Kennedy with firearms and/or weapons of mass destruction." *Id.* at 7. Kennedy also claims that while he was at a Target store parking lot, the police "used excessive force and transported Kennedy in handcuffs and chains to the County of Lehigh prison." *Id.* He claims that he was "emotionally and physically injured by employees" while at the prison. *Id.* Specifically, Kennedy asserts that he "was stripped naked, given a rectal exam, forced to wear prison clothes, given physical and mental exams and caged in solitary confinement conditions." *Id.* He further asserts that the bench warrant used is a "(fake) Bench Warrant [and] does not grant Defendants jurisdiction or authority to damage Kennedy and/or deny him his rights." *Id.* at 6.

Further, Kennedy identifies that the operation of the prisons injured him and that the Commonwealth of Pennsylvania "commit[ted] human rights violations and (possible) war crimes under the Lieber Code." *Id.* at 11. Similarly, Kennedy argues under his vicarious liability section that because the "defendants took mugshots, fingerprints and other private data" that they violated his rights. *Id.* at 18. He indicates that the United States is liable because it "failed to protect Kennedy from physical and emotional injury in solitary confinement." *Id.* Kennedy, similar to his amended complaint, requests "general damages in the sum

4

of $1,000 for each day of unlawful behaviors for each Defendant, or $10,000,000.00, whichever is greater." *Id.* at 19. Further, he requests damages because of "absence of required actions" amounting to "$5,000 for each failure to act; or $10,000,000.00, whichever is greater." *Id.*

In his second amended complaint, Kennedy has changed almost all the named defendants from his previous amended complaint to now include the United States of America, the United States Postal Service, the Commonwealth of Pennsylvania, Joshua D. Shapiro, Thomas G. Saylor, Thomas B. Darr, the Pennsylvania State Police, David John Dutcavich (styled as "David John Dutcavage" in the first amended complaint), and Maria Casey. *Id.* at 3. Kennedy further asserts claims throughout his second amended complaint against individuals, seemingly at random, including: Megan J. Brennan, Sheriff Joseph N. Hanna, Schuylkill County, Lehigh County, M. Judith Johnston, Judge William E. Baldwin, Thomas Patrick Pellish, Philip C. Petrus, Christina E. Hale, Richard C. Clink, David A. Plachko, Edgardo Colon, Charles Miller, Christina Holman, Michael O'Pake, Joseph Murton, William C. Reiley, John Fekety, Michael F. Krimmel, Cyrus Palmer Dolbin, Judge John E. Domalakes, Judge Jacqueline L. Russell, Gregory D. Johnson, Gail M. Greth, William A. Wyandt, Richard C. Clink, and Steven M. Lukach. *Id.* at 1-14. These named individuals, however, have not been listed as defendants to be served under Kennedy's January 13, 2019,

5

document requesting we "Take Judicial Cognizance," or by any of his follow up letters, motions to compel, or requests to the court to take notice. *See docs. 21*, *22*, *23*, *25*, *26*.

In addition to his second amended complaint, Kennedy also filed a document titled "Exhibit 1 LAW OF THE CASE," in which he outlines "the law" in a manner that can only be described as a personal thesis on how this court and any federal court should apply the law. *Doc. 12-1*. Kennedy's analysis, although historically inclined, discusses a personal interpretation of where the federal court system receives its power. *Id.* He notes that he is entitled to decisions based "in common law" which he argues comes from the original power of the Magna Carta. *Id.* at 6. Kennedy justifies this statement by way of citation to a document dating back to 1297, explaining how the Magna Carta may be invoked under the Constitution. *Id.* He furthers that claim by arguing that his rights are secure through the sovereignty of its people. *Id.* He states that because he is a citizen of America, that he is a "joint tenant[] in the sovereignty." *Id.* at 10. Accordingly, that sovereignty directly vested in him as a citizen is a "supreme power." *Id.* at 12. Such power is held by "free people" who are the "ultimate judge." *Id.* at 6. As such, the rights are secure under the Constitution, and "no sanction or penalty [can] be imposed upon [a citizen] because of [the] exercise of constitutional rights." *Id.* Kennedy calls this alleged oppression and imposition a "[c]onspiracy against

6

rights" and a "[s]editious conspiracy." *Id.* at 7, 12.  Kennedy emphasizes that we should use this document as the law for the matter at hand. *Doc. 12* at 1-2.

After Kennedy filed his second amended complaint, he filed a motion for recusal on December 7, 2018. *Doc. 13*.  We responded to this motion for recusal with an order on January 18, 2019, stating that Kennedy failed to show how the undersigned is biased and what facts demand recusal other than Kennedy's displeasure with legal rulings. *Doc. 24*.

After Kennedy's motion for recusal, he filed three motions to compel service (*docs. 14*, *22*, *25*), and eight notices/objections (*docs. 15-20*, *23*, *26*).  The motions to compel service reflected Kennedy's concern that the court would "close for business," thereby creating a delay of service on the named defendants. *Doc. 22-1* at ¶ 1; *Doc. 25-1* at ¶ 1.  Kennedy's filings for judicial notice not only outline various laws that he argues apply to this case (*docs. 18*, *19*), but also object to standards of judicial ethics including the undersigned being assigned to this case (*docs. 15*, *16*, *17*).

## III.  Screening of *In Forma Pauperis* Complaints—Standard of Review.

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases that seek redress against government officials.  Specifically, the court must

review the complaint in accordance with 28 U.S.C. § 1915(e)(2), which provides,

in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may
> have been paid, the court shall dismiss the case at any time if the court
> determines that-
>> (A) the allegation of poverty is untrue; or
>> (B) the action or appeal-
>>> (i) is frivolous or malicious
>>> (ii) fails to state a claim upon which relief may be
>>> granted; or
>>> (iii) seeks monetary relief against a defendant who
>>> is immune from such relief.

Under § 1915(e)(2)(B)(ii), the court must assess whether an *in forma*

*pauperis* complaint "fails to state a claim upon which relief may be granted."

This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of

Civil Procedure, which provides that a complaint should be dismissed for "failure

to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a

'short and plain statement of the claim showing that the pleader is entitled to

relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The statement required

by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is

and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93

(2007). Detailed factual allegations are not required, but more is required than

labels, conclusions, and a formulaic recitation of the elements of a cause of action.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a

complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint must be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are

well-pleaded factual allegations, a court should assume their
veracity and then determine whether they plausibly give rise to
an entitlement for relief."

*Santiago v.* Warminster *Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556

U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and

"'however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'"  *Erickson*, 551 U.S. at 94 (quoting *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege

sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay*

*Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  Thus, a well-pleaded complaint

must contain more than mere legal labels and conclusions.  Rather, a *pro se*

complaint must recite factual allegations that are sufficient to raise the plaintiff's

claimed right to relief beyond the level of mere speculation, set forth in a "short

and plain" statement of a cause of action.

## IV.  Discussion.

### A. § 1983 Claim.

Although Kennedy's complaint explicitly raises claims only under various

tort causes of action, we liberally construe his complaint as raising a claim for the

violation of his civil rights.  *See doc. 12* at 2 ("The government exceeded its

10

jurisdiction, and because it exceeded its jurisdiction, injured plaintiff Kennedy in loss of rights.").

Kennedy's constitutional claim arises under 42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* To establish a claim under § 1983, the plaintiff must display a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

## B. Kennedy Fails to State a § 1983 Claim Upon Which Relief Can Be Granted.

We construe Kennedy's second amended complaint as alleging three claims under §1983: violation of his right to privacy, excessive force, and conspiracy to violate his civil rights.

### 1. Kennedy's Privacy Claim.

Kennedy's privacy claim seems to be based on police taking mugshots and fingerprints after arresting him. *See doc. 12* at 18 ("Defendants took mugshots,

fingerprints and other private data from Kennedy without jurisdiction that injured Kennedy in violation of his rights."). "[T]he Fourth Amendment allows police to take certain routine administrative steps incident to arrest – i.e. booking, photographing, fingerprinting." *Maryland v. King*, 569 U.S. 435, 461 (2013). Thus, since the taking of mugshots and fingerprints were upheld in *King*, and since Kennedy has not alleged any facts showing that the arrest was unlawful, he has accordingly failed to state a privacy claim upon which relief can be granted.

### 2. Kennedy's Excessive Use of Force Claim.

Kennedy's claim of excessive use of force seems to be based on the fact that he was strip searched after being arrested. *See doc. 12* at 8. Kennedy also complains of excessive force during his arrest. *See id.* at 7. The Supreme Court of the United States emphasizes that "[c]orrectional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in on their bodies." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 322 (2012). In *Florence*, the Court held that prison strip search policies where new detainees will "expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution" are within any prison's legitimate interest of safety and protection and are thus constitutional. *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 558 (1979)). Here, Kennedy has not

alleged that he was inappropriately touched or that the search differed in any other way from the search upheld in *Florence*.  Thus, Kennedy's argument fails to state an excessive use of force claim upon which relief can be granted.

Kennedy's arrest claim also fails to state an excessive force claim upon which relief can be granted.  Although the Fourth Amendment protects a citizen against unreasonable use of force in connection with an arrest, investigatory stop, or other seizure, *Graham v. Connor*, 490 U.S. 386 (1989), Kennedy has not alleged any facts from which a fact finder could conclude that he was subjected to excessive force during his arrest.  Thus, he has failed to state an excessive use of force claim.

### 3.  Kennedy's Conspiracy Claim.

Finally, Kennedy fails to state a conspiracy claim.  To state a conspiracy claim upon which relief can be granted, a plaintiff must allege "facts from which a conspiratorial agreement can be inferred."  *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).  "To properly plead such an agreement, 'a bare assertion of conspiracy will not suffice.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).  Since Kennedy has not alleged the existence of an agreement or any facts from which we could infer the existence of an agreement, he fails to state a conspiracy claim upon which relief can be granted.  Thus, having

concluded that Kennedy fails to state a § 1983 claim upon which relief can be granted, we turn to Kennedy's remaining tort claims.

### C.  Kennedy's Tort Claims.

#### 1. Kennedy's Negligence Claim.

Kennedy claims that the Commonwealth of Pennsylvania, and its employees were negligent.  In order to plead a negligence claim upon which relief can be granted, Kennedy must allege "(1) the defendant's duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Page v. City of Philadelphia*, 25 A.3d 471, 475 (Pa. Commw. Ct. 2011).

Kennedy has failed to allege facts showing how the defendants were involved in the events of which he complains or what specific duty they owed him. Further, he has not provided facts from which we could reasonably infer that the defendants breached a duty that they allegedly owed him.  Moreover, Kennedy has not alleged any specific conduct by the defendants or that he suffered an identifiable injury.   By not providing facts, Kennedy fails to plead a duty owed by the defendants, a breach of that duty, the causal link between the defendants' conduct and his alleged injury, or that he suffered an identifiable injury.  Thus, the

14

second amended complaint fails to state a negligence claim upon which relief can be granted.

### 2. Kennedy's Intentional Infliction of Emotional Distress Claim.

Kennedy's claim of intentional infliction of emotional distress ("IIED") fails to meet the prevailing standard. "While the Pennsylvania Supreme Court has yet to formally recognize a cause of action for [IIED], *see Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000), the Pennsylvania Superior Court has recognized the cause of action and has held that, 'in order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff.'" *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)). Here, Kennedy asserts that he has emotional distress from when "Defendant Pennsylvania State Police . . . threatened [to] physically injure Kennedy with firearms and/or weapons of mass destruction." *Doc. 12* at 7.

Kennedy has not alleged any facts as to why this conduct is extreme or outrageous, and his conclusory statement that the defendants threatened to use weapons of mass destruction is absurd on its face. Moreover, Kennedy has not alleged any facts suggesting that he suffered severe emotional distress. Accordingly, he fails to state an IIED claim upon which relief can be granted.

### 3. Kennedy's Trespass Claims.

#### i. Trespass.

Kennedy's accusation that the defendants trespassed fails to state a claim upon which relief can be granted. "[T]respass is defined in Pennsylvania as an unprivileged, intentional intrusion upon land in possession of another." *Reynolds v. Rick's Mushroom Serv., Inc.*, 246 F. Supp. 2d 449, 460 (E.D. Pa. 2003) (internal citations and quotations omitted). Here, Kennedy fails to allege that anybody entered his land without his permission. Thus, Kennedy fails to state a trespass claim upon which relief can be granted.

#### ii. Trespass on the Case.

While deciphering Kennedy's particular use of the law is no easy task, "trespass on the case" at common law has transformed into what is considered today as negligence or a tort resulting in an indirect result or proximate cause that indirectly brought harm. *See Balshy v. Rank*, 490 A.2d 415, 420 (1985) (noting that trespass on the case became a generic action of trespass which was designed as "a remedy for wrongful conduct resulting in injuries which were not forcible or direct," but that "this practice has long since been abandoned"). As concluded above, Kennedy has failed to provide facts demonstrating negligence by the

defendants.  Thus, his trespass on the case claim fails to state a claim upon which

relief can be granted.

### 4. Kennedy's Claim for Failure to Provide a Republican Form of Government.

Kennedy asserts that the defendants failed to provide a republican form of

government.  His claim, however, seems to be on behalf of the citizenry at large.

*See Doc. 12* at ¶ 77 ("Our Republic is one dedicated to 'liberty and justice for

all.'").  Kennedy has addressed this same issue multiple times in different federal

courts.  *See Kennedy v. United States*, 748 F. App'x 335, 335-36 (Fed. Cir. 2019);

*Kennedy v. AT&T, Inc.*, No. 2018 WL 6188786, at *1 (D. Del. Nov. 27, 2018);

*Kennedy v. Pennsylvania*, 2018 WL 5977968, at *7-8 (E.D. Pa. Nov. 14, 2018).  In

*Kennedy v. Pennsylvania*, the Eastern District of Pennsylvania concluded that

Kennedy did not have standing to bring the claim because

> a plaintiff raising only a generally available grievance
> about government—claiming only harm to his and every
> citizen's interest in proper application of the Constitution and
> laws, and seeking relief that no more directly and tangibly
> benefits him than it does the public at large—does not state an
> Article III case or controversy.

*Kennedy*, 2018 WL 5977968 at *8 (internal citations and quotations omitted).

As we noted before in our order of November 30, 2018 (*doc. 11* at 10),

"'The irreducible constitutional minimum' of standing consists of three elements."

*Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "The

plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61). "The plaintiff,

as the party invoking federal jurisdiction, bears the burden of establishing these

elements." *Id.* (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

Since the elements of standing are "an indispensable part of the plaintiff's case,"

each element must be supported "with the manner and degree of evidence required

at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "[A]t the

pleading stage, the plaintiff must 'clearly allege facts demonstrating' each

element." *Spokeo*, 136 S. Ct. 1547 (alterations omitted) (quoting *Warth v. Seldin*,

422 U.S. 490, 518 (1975)).

    Here, like the Eastern District and consistent with our previous order (*doc.

11*), we conclude that Kennedy has not alleged facts showing that he has standing.

Kennedy fails to allege an injury, he fails to allege that his injury relates to the

defendants, and he fails to allege that there is a remedy that this court could grant

by a favorable decision. Furthermore, even if he had standing, we conclude that

the claim is frivolous since Kennedy has pleaded no facts to support it.

    Accordingly, because Kennedy lacks standing and because his claim is

frivolous, we recommend that the court dismiss his "failure to provide a republican

form of government" claim.

## V. Recommendation.

Based on the foregoing, we recommend that the court dismiss Kennedy's second amended complaint and close this case.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **19th** day of **March, 2019**.

_S/Susan E. Schwab_
Susan E. Schwab
Chief United States Magistrate Judge